# EXHIBIT A

# STATE OF MICHIGAN

## WAYNE COUNTY CIRCUIT COURT

NICOLE REID, as NEXT FRIEND for
M.R., a minor,

Case No: 25-          -CZ
Hon.

      Plaintiffs,

v.

PLYMOUTH CANTON COMMUNITY
SCHOOLS,

      Defendants.

---

HANNAH R. FIELSTRA (P82101)
**ERNST LAW FIRM, PLC**
645 Griswold, Suite 4100
Detroit, MI 48226
(313) 965-5555
hannah@ernstlawplc.com
kevin@ernstlawplc.com

---

## JURY DEMAND

      NOW COMES Plaintiff, by and through her attorneys Ernst Law Firm, PLC, and

requests a trial by jury on all issues so triable.

                      Respectfully submitted,

                      */s/ Hannah R. Fielstra*
                      Hannah R. Fielstra (P82101)
                      ERNST LAW FIRM, PLC
                      Counsel for Plaintiff
                      645 Griswold Street, Suite 4100
                      Detroit, Michigan 48226
                      hannah@ernstlawplc.com

Dated: November 25, 2025

STATE OF MICHIGAN

WAYNE COUNTY CIRCUIT COURT

NICOLE REID, as NEXT FRIEND for
M.R., a minor,

Case No: 25-          -CZ
Hon.

Plaintiffs,

v.

PLYMOUTH CANTON COMMUNITY
SCHOOLS,

Defendants.

HANNAH R. FIELSTRA (P82101)
**ERNST LAW FIRM, PLC**
645 Griswold, Suite 4100
Detroit, MI 48226
(313) 965-5555
hannah@ernstlawplc.com
kevin@ernstlawplc.com

| There is no other civil action between the parties arising out of the same transaction or occurrence as alleged in this Complaint pending in this court, nor has any such action been previously filed and dismissed or transferred after having been assigned to a judge.  I do not know of any other civil action, not between these parties, arising out of the same transaction or occurrence as alleged in this complaint that is either pending or was previously filed and dismissed, transferred, or otherwise disposed of after having been assigned to a judge in this court. |
| --- |

## COMPLAINT AND DEMAND FOR JURY TRIAL

**NOW COMES** the above-named Plaintiff, by and through counsel, ERNST LAW PLC, and for her Complaint against the above-named Defendant, states as follows:

*(left margin, rotated text)* 25-018729-CZ FILED IN MY OFFICE   Cathy M. Garrett   WAYNE COUNTY CLERK   11/25/2025 1:01 PM   Ibrahim Islam

## JURISDICTION AND VENUE

1.      This is an action for money damages brought under the statutes and common law of the State of Michigan.

2.      Venue is proper in this Court as all of the events giving rise to this action occurred in the County of Wayne, State of Michigan.

3.      Plaintiff Nicole Reid, and her minor child, M.R., are residents of Canton, in the County of Wayne, State of Michigan.

4.      M.R. is a high school senior within the Plymouth Canton Community Schools school district and at all times relevant hereto is and has been a student within the Plymouth Canton Community Schools district.

5.      Defendant Plymouth Canton Community Schools is a public governmental entity subject to the provisions of Title II of the ADA, 42 U.S.C. §§ 12131, et seq. and the Michigan Persons With Disabilities Civil Rights Act.

## COMMON FACTUAL ALLEGATIONS

6.      M.R. is a seventeen-year-old senior student within the Plymouth Canton Community Schools district.

7.      The Plymouth Canton Community Schools district contains what is known as the Plymouth-Canton Educational Park, which is comprised of three high schools across four buildings.  Students are assigned to one of three high schools for their "home school," which handles their core academic needs including counseling, attendance, records, and graduation, but students access and may take classes at all three locations across the 305-acre site[1].

---

[1] https://pcep.pccsk12.com/about/high-school-assignment-process

2

8.      Students rely on walking between the four buildings using pathways, some of which are up to ¼ mile long.

9.      M.R. is currently assigned to Canton High School.

10.     He has been diagnosed with Noonan Syndrome, a genetic disorder which has affected his ability to ambulate easily without the use of an aid.

11.     Defendants are aware of M.R.'s disabilities.

12.     In approximately September of 2021, M.R. began using a power-assisted wheelchair at West Middle School full time.   West Middle School is also within the Plymouth Canton Community Schools district.

13.     In approximately September of 2022, M.R. entered high school and began attending Plymouth-Canton Educational Park through his assigned school, Canton High School.

14.     Immediately, Plaintiff and M.R. noticed several inaccessibility and safety concerns, such as a lack of access to doors due to missing or broken assistive hardware, broken concrete and steep ramps on the provided pathways between buildings.

15.     In February of 2023, Plaintiff and M.R. were advised by Defendants that additional door buttons to access doors while in his wheelchair would have to be added to M.R.'s IEP (Individualized Education Program).

16.     At that time, Canton High School had only two to three doors accessible to M.R., despite the fact that it had over thirty exterior doors.

17.     In addition, M.R. consistently relies on the use of elevators, as he is not able to use the stairs while using his power-assisted wheelchair.

18.     At the time, Defendant had no elevator policy until they adopted one after Plaintiff filed a charge with the Office of Civil Rights.

3

19.     Many of M.R.'s classes, including a special education class, are located on the second floor of Canton High School, which he cannot access if elevators are not working. In addition, M.R. needed access to the school's Media Center and its elevator, which he could not access.

20.     During the summer of 2023, there was one new allegedly ADA-compliant restroom put into each school.  The bathroom was added to the second floor of two buildings, which M.R. cannot access if the elevators are not working.  The restroom doors in Canton high school were narrow with no side clearance, and therefore did not comply with ADA standards.

21.     In September of 2023, M.R. began his sophomore year of high school.  At that time, there was cracked, broken, heaved and potholed pavement on the path from Canton High School to Plymouth High School. Plaintiff reported the condition of the path to the principal.

22.     In October of 2023, Plaintiff continued to complain about the condition of the pathway to the principal.  Another student and a teacher took photos documenting the condition.

23.     Due to unreliable elevators on or around October of 2023, M.R. was not able to access the classrooms to take many of his classes, so he worked alone in an unused room or conference room, missing valuable instructional time with his teachers and learning beside his peers and classmates.

24.     In January of 2024, Plaintiff continued to follow up with Canton High School to get working buttons so M.R. could access doors with his wheelchair, reliable elevators, and ask that building entrances be cleared of snow and ice so M.R. could access them in his wheelchair. Plaintiff continued to complain about the continued disrepair of the pathways between schools.

4

25.     In February of 2024, M.R. hit a pothole on the pathway Plaintiff had complained about for several months. He was thrown from his wheelchair, bruised and impacted emotionally. In addition, his wheelchair needed alignment.

26.     M.R. could not access classes in other buildings because the potholes were not patched and ice was not removed, missing valuable instructional time with his teachers and learning beside his peers and classmates.

27.     In February of 2024, Plaintiff filed a charge with the Office of Civil Rights.

28.     In March of 2024, Plaintiff and M.R. were told that the pathways would not be replaced until the summer.

29.     In April and May of 2024, the elevators M.R. needed to access many of his classes in both Plymouth and Canton High Schools did not work 1-2 days per week.

30.     In the Spring of 2024, Plaintiff learned that another student was transported between classes using a golf cart driven by a staff member. Plaintiff inquired with Canton High School's office staff with regard to whether that was an option for M.R., and was told that it was not due to his wheelchair. He was not given a similar accommodation or option.

31.     In August of 2024, Plaintiff and M.R. were assured that the pathways would be fixed before the start of the new school year.

32.     On or about September 6, 2024, M.R. was again thrown from his wheelchair due to cracked and broken pavement on the only pathway between Canton and Salem High Schools.

33.     On or about September 11, 2024, Plaintiff was told that the pathway between Canton High School and Salem High School would not be repaired by winter, but they would "do their best" to ensure the snow did not pile up in front of doors, preventing M.R.'s access to them.

34. On or about September 15, 2024, Plaintiff filed a hate/bias complaint with the school district, in which she complained of disability discrimination.

35. On September 23, 2024, Plaintiff's discrimination claims were substantiated by the principal at Canton High School.

36. On or about October 22, 2024, Plaintiff met with administration for the Plymouth Canton Community Schools. She wanted to ensure that pathways would be kept clear of snow and ice so they remained accessible to M.R. and that elevators would be repaired so M.R. could consistently use them. Plaintiff was not given answers, and the district had no response to how M.R. would be educated if he could not access his classrooms and teachers due to the pathways or inoperable facilities.

37. In November of 2024, M.R. was repeatedly shocked by the elevator at Salem High School. As a result, he could not safely access classes on the second floor.

38. Because he could not access his classes and the pathway between buildings was not consistently clear, his classes needed to be moved to one floor in one building. He was removed from chemistry class and put into another academic skills class and thus had two of the same classes back-to-back. Defendant tried to blame M.R.; thereafter Plaintiff discovered other students who relied on the elevator were shocked as well.

39. Later that month, Plaintiff was informed of construction that would impact the curb cut from the student parking lot to Canton High School. Plaintiff asked for a temporary ramp so M.R. could access the accessible spaces in the parking lot he paid to park in. A ramp was not provided for three months and when it was, presented several safety concerns.

40.     Plaintiff filed a complaint with the Michigan Department of Civil Rights and complained at a school board meeting.   At the end of February, a portable ramp was finally provided.

41.     From the time M.R. began attending high school, there was effectively no ADA compliance officer.   Those named in the district policy had no idea they were named officers, nor did the superintendent.   As a result, Plaintiff and M.R. effectively had no one to contact regarding ADA complaints.

42.     In addition, Defendant had no ADA grievance form until Plaintiff provided examples of forms to Defendant and Defendant finally adopted one.

43.     In approximately May of 2025, construction began in the southernmost lot at Canton High School, which prevented M.R. from accessing the building from the student parking lot.

44.     In approximately September of 2025, the parking lot construction finished, and the curb cut was moved farther from the accessible parking spots and the accessible entrance to the school and the accessible parking spots are not the closest spots to the accessible entrance.

45.     On or about September 5, 2025, Plaintiff filed an ADA grievance regarding the student parking lot on behalf of M.R.

46.     As a result of Defendant's illegal acts and/or omissions, M.R. missed instructional time with his teachers and learning beside his peers and classmates, could not take classes he wanted to take because he could not access them, had difficulty maintaining friendships with his peers and had his grades affected.

47.     As a direct and proximate result of Defendants' illegal acts and/or omissions, Plaintiffs suffered the following injuries and damages including, but not limited to:

7

a.  Physical pain and suffering;

b.  mental anguish;

c.  emotional distress;

d.  severe anxiety;

e.  fear and humiliation;

f.  embarrassment;

g.  medical treatment;

h.  increased cost of wheelchair maintenance/upkeep;

i.  reasonable attorney fees and costs;

j.  other damages to be revealed during the course of discovery and litigation.

**COUNT I:**
**GROSS NEGLIGENCE**

48.     Plaintiff, by reference, incorporates the preceding paragraphs of her Complaint as though fully set forth herein.

49.     At all times, Defendant owed M.R. a duty to maintain the premises in a reasonably safe condition, to exercise ordinary care to protect him from unreasonable risks of injury that were known or should have been known by Defendant, to warm Plaintiff of any and all dangerous conditions existing on Defendant's property and to inspect and discover possible dangerous conditions.

50.     Defendant knew and/or should have known that the premises presented a danger to M.R.

51.     Defendant's actions and/or inactions constitute gross negligence under Michigan state law.

8

52.     Defendants breached their duties to Plaintiff in at least one or more of the following particulars, so far is presently known:

    a.  Failing to correct the dangerous defect in their premises;

    b.  Failing to warn its invitees and/or business visitors of the dangers associated with the premises;

    c.  Failure to take other corrective measures;

    d.  Failing to maintain the premises in a reasonably safe condition;

    e.  Failing to inspect the premises for hazards, dangers, and improper conditions;

    f.  Failing to maintain the premises, which was provided specifically for use by the public in a safe condition;

    g.  Failing to repair the premises, correct hazards, dangers, and improper conditions;

    h.  All other breaches to be discovered by and through discovery.

53.     As a direct and proximate result of these Defendants' grossly negligent conduct, Plaintiffs suffered injuries as previously described.

54.     Defendant cannot claim governmental immunity for liability as the defect in the fixture which caused the Plaintiff injury is a building defect in a building open for use by the public, for gross negligence, and/or any other exceptions to governmental immunity.

WHEREFORE, Plaintiff requests that this Court award to the Plaintiff and against the Defendant the following damages and/or relief:

    a.  Compensation for all allowable economic damages;

    b.  Compensation for all allowable non-economic damages;

    c.  Attorney fees and costs;

9

d.       Interest on all allowable damages;

e.       Any and all additional damages allowed under Michigan law;

f.       Such other and further relief as appears reasonable and just under the circumstances of this case.

**COUNT II:**
**VIOLATION OF PERSONS WITH DISABILITIES CIVIL RIGHTS ACT ("PWDCRA")**
**MCL § 37.1101 *et. seq.***

55.     Plaintiff, by reference, incorporates the preceding paragraphs of his Complaint as though fully set forth herein.

56.     M.R. has a disability which has and does substantially limit major life activities.

57.     M.R. also, or in the alternative, was regarded as having a disability by Defendant Plymouth Canton Community Schools.

58.     At all relevant times, Defendant Plymouth Canton Community Schools was a place of public accommodation and educational institution as defined by the Act.

59.     At all relevant times, M.R. had the right to public accommodations and educational institutions free from discrimination based on his disability.

60.     M.R. was denied the opportunity to obtain a full and equal enjoyment of a place of public accommodation and educational institution, or the services provided there, without discrimination because of his disability.

61.     M.R. was denied accommodations for purpose of public accommodation and education because of his disability.

62.     That disability is unrelated to his ability to utilize and benefit from the institution or its services.

63.     As a direct and proximate result of Defendant's conduct, M.R. has been damaged in the manner outlined above.

10

WHEREFORE, Plaintiff requests that this Court award to the Plaintiff and against the Defendant the following damages and/or relief:

a. Compensation for all allowable economic damages;

b. Compensation for all allowable non-economic damages;

c. Attorney fees and costs;

d. Interest on all allowable damages;

e. Any and all additional damages allowed under Michigan law;

f. Such other and further relief as appears reasonable and just under the circumstances of this case.

## COUNT III:
## VIOLATION OF TITLE II OF THE AMERICANS WITH DISABILITIES ACT, 42 U.S.C. §§ 12131 et seq.

64. Plaintiff, by reference, incorporates the preceding paragraphs of his Complaint as though fully set forth herein.

65. Title II of the ADA and its regulations provide that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. (See also 28 C.F.R. Part 35).

66. At all relevant times, Defendant Plymouth Canton Community Schools was a place of public accommodation and educational institution subject to Title II of the ADA, 42 U.S.C. § 12131.

67. M.R. is an individual with a disability within the meaning of 42 U.S.C. § 12102.

68. M.R. is a qualified individual with a disability within the meaning of 42 U.S.C. § 12131(B).

11

69.     Defendants intentionally violated M.R.'s rights under Title II of the ADA and its regulations by intentionally excluding him from participation in and denying him the benefits of Defendants' services, programs, and activities, on the basis of disability, and by subjecting him to discrimination.

70.     Defendants intentionally violated M.R.'s rights under Title II of the ADA and its regulations by failing to provide the accommodations and services necessary to ensure that M.R. was able to attend his classes on second floors and in other buildings, use doors and entryways, use restrooms and park in the student parking lot.

71.     Defendants otherwise intentionally discriminated against M.R. in violation of Title II of the ADA.

72.     Defendants exhibited bad faith and/or gross misjudgment in engaging in the conduct that violated M.R.'s rights under Title II of the ADA.

73.     Defendants acted with deliberate indifference toward M.R.'s rights protected by Title II of the ADA.

74.     Due to Defendants' violations of Title II of the ADA, M.R. has suffered and continues to suffer mental and emotional suffering, humiliation, frustration, anxiety, sadness, hopelessness, isolation, and other forms of mental and emotional anguish.

WHEREFORE, Plaintiff requests that this Court award to the Plaintiff and against the Defendant the following damages and/or relief:

a.     Compensation for all allowable economic damages;

b.     Compensation for all allowable non-economic damages;

c.     Attorney fees and costs;

d.     Interest on all allowable damages;

12

e.      Any and all additional damages allowed under Michigan law;

f.      Such other and further relief as appears reasonable and just under the circumstances of this case.

## **RELIEF REQUESTED**

WHEREFORE, for the foregoing reasons, Plaintiff seeks injunctive relief, judgment for damages in her favor in whatever amount a jury deems fair and reasonable, together with her interest, costs, and attorney fees.

Respectfully submitted,

*/s/ Hannah R. Fielstra*
Hannah R. Fielstra (P82101)
Counsel for Plaintiff
ERNST LAW FIRM, PLC
645 Griswold Street, Suite 4100
Detroit, Michigan 48226
(313) 965-5555
hannah@ernstlawplc.com

Dated: November 25, 2025

13